IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MICHELLE ROCKSMORE**, both in her
capacity as an individual and, in addition, on
behalf of others similarly situated,

      Plaintiffs,

      v.

**SHARON HANSON, JAMES "JIMMY"
HANSON** and **PAL'S SHANTY, INC.**, an
Oregon corporation,

      Defendants.

No. 3:14-cv-01114-MO

OPINION AND ORDER

**MOSMAN, J.**,

## INTRODUCTION

Plaintiff Michelle Rocksmore was employed as a server at Pal's Shanty, a bar and
restaurant owned and operated by brother and sister James and Sharon Hanson ("Defendants").
Ms. Rocksmore brings two claims against her former employers. Her first claim is for alleged
minimum wage violations. Ms. Rocksmore says that she and other employees were forced to
pool their tips with managers, including Ms. Hanson, and other "back-of-the-house staff," none
of whom were traditionally tipped employees. (Pl.'s Compl. [1] ¶ 7.) She says this practice
makes the tip pool "invalid" and violates the minimum wage provision of the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 206 (2012).

Ms. Rocksmore's second claim is for retaliation. Ms. Rocksmore says she spoke out in
opposition to the tip pool, making verbal complaints to her employer at a staff meeting on
August 26, 2013.  Four days later, she was terminated. She claims this was a violation of the
FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3) (2012).

1 – OPINION AND ORDER

Defendants moved for summary judgment on both claims. On the minimum wage claim, they assert that Ms. Rocksmore was paid an hourly cash wage that exceeded the federal minimum. Defendants argue that this alone fulfilled their minimum wage obligations, making the details of the tip pool essentially irrelevant to the inquiry. On the retaliation claim, Defendants argue that because the tip pool was not regulated by the FLSA, Ms. Rocksmore's complaints about it are not protected activity under the statute. Alternatively, they say Ms. Rocksmore released all of her claims for retaliation in a set of prior settlement agreements between the parties.

For the reasons explained below, I GRANT Defendants' motion with respect to the minimum wage claim, but DENY it with respect to the retaliation claim.

## SUMMARY OF FACTS

I.    **Background**

Pal's Shanty was a traditional tavern style bar and restaurant located in northeast Portland, Oregon, until it was destroyed by fire in November of 2013. Ms. Rocksmore was employed there from roughly August of 2012 to October of 2013. According to Defendants, she worked an average of two shifts per week. (Defs.' Mem. Supp. Summ. J. [24] at 3.) She was paid on an hourly basis, and also kept at least some of her tips. In 2012, Ms. Rocksmore's hourly pay rate was $8.80 an hour, the Oregon minimum wage. (Hanson Dec. [26] ¶ 7, Ex. B & C.) In 2013, her rate was $9.00 an hour, just above the Oregon minimum wage for that year of $8.95. *Id.* Any tips she received were an addition to those wages. Throughout Ms. Rocksmore's employment, the federal minimum wage was $7.25 an hour. 29 U.S.C. § 206(a)(1)(C).

2 – OPINION AND ORDER

Ms. Rocksmore alleges that she and other employees were forced to pool their tips with kitchen staff and managers, including Ms. Hanson. For their part, Defendants admit that Ms. Rocksmore participated in a tip pool with other employees. Defendants say only that "the staff responsible for preparing and serving food and drinks did share tips among themselves in accordance with an agreement that was known to the employees throughout their employment." (Second Hanson Dec. [38] ¶ 6.) Beyond that, the facts are in dispute. Ms. Rocksmore says nothing beyond the allegations in the complaint, only asserting that discovery is necessary to determine the nature and validity of any tip-pooling agreement. (*See* Pl.'s Resp. to Summ. J. [31] at 9–10.)

### A.    *Termination*

Ms. Rocksmore says she complained about and opposed the "illegal tip pool" to her employer, publicly with other employees, and at a staff meeting on August 26, 2013. (Pl.'s Compl. [1] ¶ 9.) She claims she was terminated on August 30, 2013, in retaliation for that opposition and complaint. Again, Defendants admit Ms. Rocksmore complained about the tip pool, but assert that she was terminated for non-retaliatory reasons—poor performance and because another server wanted more hours. (Defs.' Mem. Supp. Summ. J. [24] at 3.)

Following her termination, Ms. Rocksmore, through her attorney, wrote a wage demand letter to Pal's Shanty alleging numerous violations of wage and hour laws and asserting that the tip pool was illegal. (Second Shults Dec. [37] Ex. G.) Defendants disagreed with these allegations, and disagreed that Ms. Rocksmore was not paid all wages due and owing at the time of her termination. However, they issued two checks totaling $400 (minus applicable withholdings) allegedly in satisfaction of all wages due and owing and any associated state law penalties. (Shults Dec. [25] Ex. B.)

### B.    NLRB Charge

On January 14, 2014, Ms. Rocksmore, again through her attorney, filed a charge with the NLRB alleging that Defendants "discriminated against, retaliated against, and terminated [her] for engaging in protected activity, including but not limited to (1) discussing with other servers and employees whether the employer's wage-and-hour policies and tip sharing provisions were common in the industry, and whether they were fair and legal, and (2) raising the issue to the employer during a staff meeting." (Shults Dec. [25] Ex. C.)

### C.    Settlement Agreements

Defendants disputed the charge, but entered into settlement agreements with both the NLRB and Ms. Rocksmore. These are embodied in two separate agreements.

#### 1.    NLRB Settlement

Under the NLRB Settlement, Defendants agreed to pay Ms. Rocksmore $2000, supposedly the full amount of backpay to which the NLRB determined she could have lost. (Shults Dec. [25] Ex. D.) The scope of this settlement agreement was limited to the allegations in the NLRB case. *Id.*

#### 2.    Settlement & Mutual Release

In a separately negotiated "Settlement Agreement and Mutual Release of Claims" ("Release"), Defendants agreed to pay Ms. Rocksmore $2500 in lieu of reinstatement and in exchange for a release of certain claims. (Shults Dec. [25] Ex. E.) The Release was structured with paragraph one stating the purpose of the agreement, paragraph two containing a general release of any and all claims, and paragraph three carving out an exception to the Release for certain state law and FLSA claims:

> 1. In addition to the $2,000 provided for in the Settlement Agreement in [NLRB] Case No. 117155, the parties have separately negotiated for and agree that Company agrees to

pay Employee $2,500 . . . in lieu of any reinstatement she would be entitled to under the NLRB settlement and in exchange for the release contained herein.

2. Except as expressly stated in Item 3 of this Settlement Agreement and Mutual Release of Claims, Employee releases Company and Jim Hanson and Sharon Hanson from any and all claims, known or unknown, relating to issues arising out of Employee's employment and separation from employment with Company up to the date of this Settlement Agreement and Mutual Release of Claims, including but not limited to any and all damages, attorney fees, back or front pay, interest, or emotional distress, based on any claim of any nature, including but not limited to any claim under any state or federal statute including ORS 659A, the Oregon Fair Employment Practices Act, the [ADA, Title VII, FMLA, NLRA, etc…] all claims for discrimination, retaliation, wrongful termination, whistleblowing, all claims for pay or compensation, as well as claims under any contract (express or implied), tort, common law, or any other claim of any nature. This release includes but is not limited to those claims and matters which have been asserted in NLRB case No. 19-CA-117155.

\* \* \*

3. The mutual release described in Item 2 of this [Settlement & Release] DOES NOT include any claims, defenses or offsets for any violations of ORS Chapters 652 or 653 or the federal Fair Labor Standards Act. As stated in Item 2, Employee, the Company and other executing parties release each other from all other full claims, actions or suits (whether past or present, known or unknown, asserted or unasserted) they may have against each other and agree that this [Settlement & Release] will act as a complete bar to any such claims.

4. Employee agrees to waive any right or claimed right to reinstatement with Company . . . .

*Id.* at 1–2.

The agreement was signed by Pal's Shanty and Defendants on May 5, 2014. Ms. Rocksmore signed the agreement on May 8, 2014. Counsel for both parties signed that they had "reviewed and approved" the agreement "as to form." *Id.* at 2. Although the parties offer competing interpretations, neither argues the agreement is invalid.

### D.    *Lawsuits*

Ms. Rocksmore subsequently filed suit in both state and federal court. Her state court suit alleges violations of state wage and hour laws. (Shults Dec. [25] Ex. F.) This federal suit asserts claims under the FLSA. Plaintiff initially moved for a stay of this federal suit, pending the appeal to the Ninth Circuit of *Oregon Restaurant & Lodging, et al. v. Solis*, 948 F.Supp. 2d 1217 (D.

5 – OPINION AND ORDER

Or. 2013). However, Ms. Rocksmore withdrew that request, opting to proceed on a slightly modified theory.[1] Defendants filed their Motion for Summary Judgment.

## DISCUSSION

I.     **FLSA Minimum Wage Claim**

The backbone of Ms. Rocksmore's complaint is the allegation that she and other employees were forced to pool their tips with Ms. Hanson and other managers, as well as "back-of-the-house staff" who were not traditionally tipped employees. (Pl.'s Compl. [1] ¶ 7.) She contends this makes the tip pool invalid under the FLSA, which results in the tip pool violating the minimum wage provision, 29 U.S.C. § 206. She argues further that because the tip pool is "invalid," she is entitled to the minimum wage *and* all of her tips.

Ms. Rocksmore makes these allegations with only a passing reference to her hourly cash wage, simply asserting that "Plaintiff and Collective members were employed at or under the applicable Oregon minimum wage, which in turn was very near the applicable federal minimum wage." (Pl.'s Compl. [1] ¶ 8.) The Complaint alleges that "nonpayments and deductions from pay as enumerated herein reduced their pay for a given workweek below the level of the applicable minimum wage for that workweek." *Id.*   However, the only deductions and nonpayments alleged in the Complaint are those stemming from the tip pool. *Id.* at ¶ 12. The Complaint says, "PAL'S SHANTY was required to pay Plaintiff and the collective members at least the amount of the federal minimum wage, when those wages were due, but willfully failed to do so, *by taking their tips for a mandatory invalid tip pool*."  (Pl.'s Compl. [1] ¶ 12.) (emphasis added).

---

[1] Instead of relying on the Department of Labor regulations found invalid in *Oregon Restaurant & Lodging*, Ms. Rocksmore relies on the fact that Ms. Hanson participated in the tip pool. She claims this distinguishes the present case from those where the tip pool was limited to non-managers.

In her Response to Defendants' Motion for Summary Judgment, Ms. Rocksmore also alleges that her time records were rounded down to the nearest quarter hour, (Pl.'s Resp. to Summ. J [31] at 5.) But she does not allege any specific facts regarding these allegations, arguing only that discovery is needed to support this theory. The only specific allegation in her complaint on the minimum wage claim is that of the tip pool.

Defendants argue that Ms. Rocksmore's hourly cash wage was at all times above the required federal minimum wage without even considering any tips she may have received. This means they are not using or claiming any "tip-credit" to satisfy their minimum wage obligation. Therefore, under *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010), their tip-pool arrangement need not comply with section 203(m). Defendants also assert that the Department of Labor's regulations on tip pools do not control because they were held invalid in *Oregon Restaurant & Lodging*, 948 F. Supp. 2d at 1227.

### A.    *Legal Standard*

In support of her first claim, Ms. Rocksmore cites the definition section of the minimum wage provision, 29 U.S.C.A. § 203(m), which states:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [$2.13 an hour]; and
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title [$7.25 an hour].
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C.A. § 203(m).

In short, this provision sets up a rule that allows employers to pay tipped employees less than the usual federal minimum wage, provided they follow the notice and tip-pooling rules. If the employer complies, it need only pay a cash wage of $2.13 an hour, and can count the employee's tips to make up the difference between the employee's reduced rate and the usual minimum wage of $7.25 an hour. This "additional amount on account of the tips received" is commonly called a "tip credit."

For example, if a waiter were paid a cash wage of $5.00 an hour, but received average tips in the amount of $10.00 an hour, the employer who followed the rules could claim a tip credit of at least $2.25 to meet its minimum wage obligation. If the employer *did not* follow the requirements, either by failing to give the employees notice, or using a tip pool that did not conform to the statute, the employer would lose its tip credit. With no tip credit, the statute would only recognize the $5.00 an hour of actual cash wage paid, which would constitute a minimum wage violation.

In *Cumbie v. Woody Woo Inc.*, 596 F.3d 577 (9th Cir. 2010), the Ninth Circuit analyzed the language of these provisions and applied it to facts almost identical to Ms. Rocksmore's, concluding they *did not* constitute a minimum wage violation. In *Cumbie*—like here—the plaintiff was paid an hourly cash wage that exceeded the federal minimum and was also allowed to keep some of her tips. *Id.* at 582–83. In *Cumbie*, it was undisputed that employees who did not customarily receive tips participated in the tip pool. *Id.* at 581. The plaintiff argued that the inclusion of those employees in the tip pool made it invalid under section 203(m) and that the plaintiff must be allowed to keep all of her tips regardless of whether the employer was claiming a "tip credit." The Ninth Circuit rejected this argument, holding that section 203(m) "imposes *conditions* on taking a tip credit and does not state a freestanding *requirement* pertaining to all

tipped employees." *Cumbie*, 596 F.3d at 581 (emphasis in original). The court explained, "A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period." *Id.* Since the employer was not claiming that tips should be counted towards its minimum wage obligation, the court perceived "no basis for concluding that [the employer's] tip pooling arrangement violated section 203(m)." *Id.* Payment of an hourly rate above the federal minimum was alone enough to meet the employer's obligation.

### B.    Analysis

The only significant factual difference between Ms. Rocksmore's case and *Cumbie* is that here, managers (and a co-owner working as a manager) participated in the tip pool. In contrast, the *Cumbie* tip pool was limited to service people and did not include managers. Plaintiff's counsel argues that because of this, the employer is essentially taking a de facto tip credit. Plaintiff argues that using an "invalid" tip pool to take the employees' tips, and then turning around and using this same money to pay employee wages, allows what is, in substance, a tip credit against their minimum wage obligation, even if they do not call it that.

This argument certainly has some logical appeal. By paying an hourly cash wage above the federal minimum, an employer can achieve a result that is barely distinguishable from the one the statute would clearly forbid if that employer took even a modest tip credit. But it is the statute itself that makes this distinction. This result is not at odds with the purpose of the FLSA. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999). It was *not* intended to create a freestanding regulation of tip pools. *See Cumbie*, 596 F.3d at 581. Consequently, "[t]he FLSA does not restrict tip pooling when no tip credit is taken." *Id.* at 582.

Further, these are not new arguments. Plaintiff's counsel made the "de facto tip credit" argument in *Cumbie*, and was rejected by both the District Court[2] and the Ninth Circuit.[3] While Plaintiff is correct in pointing out that *Cumbie* did not involve managers participating in the tip pool, the holding did not rest on that fact. Rather, it was the text of the statute that compelled that result, just as it does here. As Judge O'Scannlain explained:

> Cumbie received a wage that was far greater than the federally prescribed minimum, plus a substantial portion of her tips. Naturally, she would prefer to receive *all* of her tips, but the FLSA does not create such an entitlement where no tip credit is taken. . . . [N]othing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken[.]

*Cumbie*, 596 F.3d at 582–83.

The inclusion of managers in the tip pool does not compel a different result.

In sum, the differences between the two cases are not enough to deviate from rule in *Cumbie*.[4] The bottom line here is the language of section 203(m), which requires that the employee's cash wage, plus an additional amount on account of qualified tips, must equal at least the federal minimum wage for the week ($7.25 an hour). Here, the cash wage paid was $8.80 an hour, plus zero tips (assuming the pool would be invalid). This exceeds the $7.25 required by federal law, so the statutory method of calculating the minimum wage is clearly satisfied.

---

[2] *See Cumbie v. Woody Woo, Inc.*, No. CV08-504-PK, 2008 WL 2884484, *6 (D. Ore. July 25, 2008) ("Plaintiff asserted that Defendants' redistribution of servers' tips to kitchen staff constituted the 'money laundering' version of the employer's invalid practice in *Winans* [*v. W.A.S., Inc.*, 112 Wash. 2d 529 (1989)]. . . . Arguably a dollar saved in wage payments is a dollar earned for other expenses, but the law cited here does not prohibit employers from redistributing employees' tip money. Though Plaintiff presents a reasonable policy argument, such argument does not overcome the plain language of the statute[.]").

[3] *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 582 (9th Cir. 2010). "[Plaintiff's] argument, as we understand it, is that Woo is functionally taking a tip credit by using a tip-pooling arrangement to subsidize the wages of its non-tipped employees. The money saved in wage payments is more money in Woo's pocket, which is financially equivalent to confiscating Cumbie's tips via a section 203(m) tip credit (with the added benefit that this 'de facto' tip credit allows Woo to bypass section 203(m)'s conditions)." *Id.* The court responded, "Even if Cumbie were correct, we do not find this possibility so absurd or glaringly unjust as to warrant a departure from the plain language of the statute." *Id.*

[4] Plaintiff's counsel spills significant ink attempting to show that the inclusion of management in the tip pool makes it invalid under the FLSA. And he is right, as far as that goes. But that does not make it a minimum wage violation. In all the cases Plaintiff cites, the employer paid the employee a cash wage *below* the federal minimum and relied on the employee's tips to make up the difference. That was not the case here.

10 – OPINION AND ORDER

### C.    *Discovery is not necessary on this claim.*

Ms. Rocksmore's counsel asserts that he needs discovery in order to analyze payroll records "to determine whether plaintiff does or does not have a legally cognizable minimum wage claim." (Egan Dec. [32] ¶¶ 6–7.) As Defendants correctly note, "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 363 (1978)). Importantly, Ms. Rocksmore's complaint rests *entirely* on the tip pool claim. Absent any other allegations that would state a minimum wage violation, there is no reason to believe that discovery on this issue would be anything other than a classic fishing expedition.

Along the same lines, Ms. Rocksmore argues that she needs to see the purported tip pooling policy to determine if it was followed. While the ownership of the tips appears to be disputed, this dispute is not material to the minimum wage claim. Even assuming that Ms. Rocksmore was entitled to hundreds of dollars of tips per night and that her employer stole every penny, there would still be no minimum wage violation. Her cash wage met that obligation. Discovery is not necessary to determine that.

In her response motion, Ms. Rocksmore raises a cursory allegation that her time was rounded down to the nearest quarter hour. This was not stated in her complaint, and only appears to have arisen in an attempt to salvage her claim. But even giving her the benefit of all reasonable inferences here, the math does not bear it out as a viable claim. Ms. Rocksmore's wage was *substantially* above the federal minimum. Even if she was shorted fifteen minutes on every shift, she would need to have worked a highly unusual schedule for this to reduce her wage below the federal minimum. Payroll records for Ms. Rocksmore show averages around twenty

hours per pay period, approximately ten hours per week. Defendants said Ms. Rocksmore averaged two shifts a week, and Plaintiff did not controvert this. Mathematically, Ms. Rocksmore could have worked up to seven shifts a week, and even assuming the lower $8.80 an hour wage, this would *still* not be enough to bring her wage below the federal minimum.

Assuming Ms. Rocksmore's timesheet for a week indicated ten hours, her payment for this time would have been $88.00. Assuming she worked seven shifts, and was shorted the entire fifteen minutes every shift, this would mean she *actually* worked 11.75 hours that week. With the federal minimum wage of $7.25 an hour, Defendants would have been required to pay Ms. Rocksmore at least $85.19 for that week. Their actual payment of $88.00 would have satisfied this obligation. Even giving Ms. Rocksmore a substantial benefit of the doubt here, no reasonable jury could find that rounding her time down to the nearest quarter hour would have resulted in a minimum wage violation.

## II.    <u>FLSA Retaliation Claim</u>

On the retaliation claim, Ms. Rocksmore's allegations have more traction. She alleges that she complained about the illegality of the tip pool, that these complaints were protected activity under the FLSA, and that she was terminated because of her complaints. Defendants' assert three reasons for summary judgment on this claim: (A) Ms. Rocksmore's complaints did not constitute protected activity because the tip pool was not regulated under the FLSA; (B) that Ms. Rocksmore waived all claims for retaliation in the prior settlements between the parties; and (C) the retaliation claim is barred by issue preclusion.

//

//

### A.    *Protected activity?*

Defendants assert that because Ms. Rocksmore does not have a legally cognizable claim under the FLSA, her complaint to management about the tip pool is not protected activity under the anti-retaliation provision, section 215(a)(3). Defendants cite cases that take a narrow view of its protection, requiring an actual violation or something close to it. In response, Ms. Rocksmore pulls from cases that read the protection broadly, requiring no more than a good faith belief that the employer's actions violate the FLSA. While neither is a precisely accurate statement of the law, ultimately, Ms. Rocksmore's reading is closer to the rule.

### 1.    Legal Standard

To begin, the FLSA's anti-retaliation provision states that it shall be unlawful for any person to:

> discharge or in any other manner discriminate against any employee because such employee has filed *any complaint* or instituted or caused to be instituted any proceeding *under or related to* this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C.A. § 215(a)(3) (emphasis added).

Like most retaliation claims, those under FLSA require three elements: (1) statutorily protected conduct, (2) an adverse employment action, and (3) a causal link between the plaintiff's conduct and the employment action. *See Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002). Here, Defendants only briefly mention causation, noting their purported non-discriminatory justification for Ms. Rocksmore's termination. Instead, their motion for summary judgment focuses almost entirely on element one, trying to show that Ms. Rocksmore's complaints about the tip pool do not come within the protection of the FLSA. For the reasons explained below, I disagree.

Both parties begin with citations to *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999). That case gave a broad construction to the anti-retaliation provision and held that "any complaint related to the FLSA" includes informal complaints to an employer about an alleged violation of the act. *Id.* at 1004–05.[5] The *Lambert* court noted that this broad interpretation of the FLSA was in line with its purpose as a remedial statute, and served Congress's policy goals of protecting workers from economic retaliation. *Id.* at 1003.

But as Defendants point out, *Lambert* also acknowledged that "not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer." *Id.* at 1007 (citation omitted). There is some level of specificity to which a complaint must rise to qualify for protection. Rather than laying down a hard rule on this, *Lambert* indicated this would be best decided on a case-by-case basis. *Id.* at 1007–08. "[S]o long as the employee communicates the *substance* of his allegations to the employer . . . he is protected by § 215(a)(3)." *Id.* at 1008. An employee can complain either "orally or in writing, and need not refer to the statute by name." *Id.*

To illustrate the types of complaints that qualify for protection, the court cited a number of examples. One of these was *E.E.O.C. v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir. 1992). There, an employee communicated the substance of her allegations to the employer and stated her belief that the employer was "breaking some sort of law." *Id.* at 989. This was held to be protected activity. *Id.* at 990. The Supreme Court recently reiterated these principles, holding that oral complaints can qualify the speaker for protection. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1329 (2011). What is important is that the

---

[5] The *Lambert* court analogized to the federal Mine Health and Safety Act, which it said was even "more limited" than the FLSA, yet nonetheless applied to "the miner [who] notifies his *foreman* and/or safety committeeman of possible safety violations." *Id.* at 1006 (internal citation omitted) (emphasis in original).

complaint be "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute, and a call for their protection." *Id.* at 1335.

## 2.    Analysis

Defendants point to several cases where employees complained about pay related grievances, and these complaints were held *not* to constitute protected activity under the FLSA. *See, e.g.*, *Alvarado v. I.G.W.T. Delivery Sys., Inc.*, 410 F. Supp. 2d 1272 (S.D. Fla. 2006) (asking for a raise not protected); *Morke v. Archer Daniels Midland Co.*, No. 10-CV-94-SLC, 2010 WL 2403776, at *2 (W.D. Wis. June 10, 2010) (finding a plaintiff's complaints about denial of vacation pay were not protected under the FLSA because vacation pay is not compensation for working).

Most similar is the case of *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1374 (S.D. Fla. 2009). Like Ms. Rocksmore, Ms. Ash was a server complaining about a tip sharing arrangement. But in that case, Ms. Ash's deposition testimony was that she had asked the manager, on two occasions, "[a]re you really supposed to give this amount to the sushi bar[?]" *Id.* at 1373. The court said these vague statements to management were not enough to assert her rights under the statute. *Id.* at 1374.

This case illustrates nicely why Ms. Rocksmore's alleged complaints *were* sufficient to invoke the protection of section 215. Unlike Ms. Ash, who was just complaining about the tip pool generally, Ms. Rocksmore supposedly complained about the *illegality* of the tip pool. Her Complaint alleges that "[s]he spoke up in a staff meeting on August 26, 2013, again opposing the illegal tip pool." (*See* Pl.'s Compl. [1] ¶ 9.) Like the plaintiff in *Romeo Community Schools* who told the employer she thought they were "breaking some sort of law," this would be enough to put a reasonable employer on notice that Ms. Rocksmore was seeking protection of the law.

While this is admittedly not the clearest invocation of the statute, it is enough to survive summary judgment. Analyzing the exact verbiage of Ms. Rocksmore's complaint to management is impossible at this point. Without adequate discovery, it is not even clear what those words may have been. Defendants have not carried their burden of showing that there is no dispute as to any material fact here.

Nor can Defendants win the day with their arguments that Ms. Rocksmore's complaints about the tip pool were not "objectively reasonable" or in "good-faith." While these are indeed requirements for protection from retaliation,[6] Defendants first raised this issue in their Reply brief, and it has not had the benefit of adequate briefing or discovery. It would be inappropriate to grant summary judgment on this basis, especially given the limited discovery in this case.

### B.    Did Ms. Rocksmore waive her retaliation claim?

Finding at least a question of fact on all three elements of a retaliation claim under section 215(a)(3), I turn next to Defendants' argument that Ms. Rocksmore waived her retaliation claim in the two settlement agreements she executed prior to this action. Because this is essentially an issue of contract interpretation, I look to the law of the state where the contract was made. *See Scudder v. Union Nat. Bank of Chicago*, 91 U.S. 406, 411 (1875) ("[T]he contract having been made in that State, the judgment is to be given according to the law of that State.").

### 1.    Legal standard

Oregon courts interpret settlement agreements like any other contracts. *See Brunick v. Clatsop Cnty.*, 204 Or. App. 326, 338 (2006). This is a three step analysis. *Yogman v. Parrott*, 325 Or 358, 361 (1997).

---

[6] *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (holding there was no protected activity under Title VII where "no reasonable person could have believed" there was a violation of the law); *Lambert*, 180 F.3d at 1007 ("If the regulatory scheme is to effectuate its substantive goals, employees must be free from threats to their job security in retaliation for their *good faith* assertions of corporate violations of the statute." (quotation omitted) (emphasis added)).

- **Step one:** "First the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Id.*

- **Step two:** If the court determines as a matter of law that there is an ambiguity, the trier of fact will then attempt to resolve the ambiguity through extrinsic evidence of the intent of the parties. *Id.* at 363–64.

- **Step three**: If the ambiguity remains unresolved, the court will resort to appropriate maxims of construction to resolve the ambiguity. *Id.* at 364

The first question then is whether or not the settlement is ambiguous. "An ambiguity exists only if reasonably intelligent persons could honestly differ on the meaning of the provision." *State Farm Mut. Auto Ins. Co. v. White*, 60 Or. App. 666, 672 (1982). The ambiguity determination is made in light of the contract as a whole. *Yogman*, 325 Or. at 361. The court will attempt to give meaning to all of the contract's provisions, and will resist an interpretation of a disputed term that would render another part of the contract meaningless or superfluous. Or. Rev. Stat. 42.230. An inconsistency between provisions will be viewed as an ambiguity. *Portland Fire Fighters' Assn. v. City of Portland*, 181 Or. App. 85, 91, *rev. den.*, 334 Or. 491 (2002).

The Oregon Court of Appeals has consistently held that summary judgment is not appropriate where the court finds ambiguity at phase one. *See PGF Care Ctr., Inc. v. Wolfe*, 208 Or. App. 145, 151 (2006). It has also said that "[t]he threshold to show ambiguity is not high." *Milne v. Milne Constr. Co.*, 207 Or. App. 382, 388 (2006). "In determining whether a contract is ambiguous, parol evidence is admissible to explain the circumstances under which it was made. Although the evidence may not vary the terms of the written agreement, it can place the judge in the position of those whose language is being interpreted." *Id.* at 388 (quotation omitted).

### 2.    Analysis

There are two settlement agreements to consider here, both of which Defendants assert as a bar to Plaintiff's retaliation claim.

First is the NLRB Settlement in which the Defendants agreed to pay "$2000 Backpay" to "make [Ms. Rocksmore] whole" and to settle the NLRB charge. (Shults Dec. Ex. D at 3.) Defendants point out that the NLRB charge contained virtually identical allegations as to those asserted in this federal suit, claiming that the "employer discriminated against, retaliated against and terminated [Ms. Rocksmore] for engaging in protected concerted activity," i.e., complaining about the tip pool. (Shults Dec. [25] Ex. C.) Defendants argue that Ms. Rocksmore therefore waived her retaliation claim in the NLRB Settlement. Plaintiff argues the NLRB charge only addressed "unfair labor practices" under the National Labor Relations Act, and did not cover violations of any other statutes. (Pl.'s Resp. [31] at 15.)

Plaintiff is correct. The NLRB settlement was strictly limited to actions under the NLRA. The NLRB would have had no authority to adjudicate claims for violations of the FLSA. While retaliation is an "unfair labor practice" under 29 U.S.C. § 158(a)(4), that retaliation is not identical to FLSA retaliation under 29 U.S.C. § 215(a)(3).

Second is the "Settlement Agreement and Mutual Release of Claims" ("Release") (Shults Dec. [25] Ex. E.) which Ms. Rocksmore executed on the same day as the NLRB Settlement. As explained in paragraph one of the Release, Defendants agreed to pay Ms. Rocksmore an additional $2500 in lieu of any reinstatement she would be entitled to and in exchange for the Release. The language of the agreement was structured with a general release in paragraph two, and a more specific carve-out in paragraph three.

Paragraph two, the general release says, in relevant part:

*Except as expressly stated in Item 3* …Employee releases [Defendants] from any and all claims, known or unknown, relating to issues arising out of Employee's employment and separation from employment … including but not limited to any and all damages, attorney fees, back or front pay, interest, or emotional distress, based on any claim of any nature, including but not limited to any claim under state or federal statute, including [a laundry list of statutes], all claims for discrimination, retaliation, wrongful termination,

whistleblowing, … or any other claim of any nature. This release includes but is not limited to those claims and matters which have been asserted in NLRB Case No. 19-CA-117155.

(Shults Dec. [25] Ex. E) (emphasis added).

Paragraph three, the carve-out says, "The mutual release described in Item 2 … DOES NOT include any claims, defenses or offsets for any violations of … the federal Fair Labor Standards Act." *Id.* (emphasis in original). Of course, the FLSA provides a claim for retaliation in section 215(a)(3).

Given this structure, the natural reading of the Release begins with the exception. The exception then modifies everything that comes after it. Because the exception expressly includes "any claims" for violations of the FLSA—of which retaliation is one—the most logical way to read the Release is to understand that Ms. Rocksmore reserved all claims under the FLSA including her claim for retaliation. By placing the "Except as provided" language first and foremost, the parties indicated that whatever else might be included in the waiver section of paragraph two, FLSA claims were to be reserved.

Defendants argue that Ms. Rocksmore's retaliation claim has been released because it is described by the waiver portion of paragraph two. Retaliation is a "claim … relating to issues arising out of [her] employment and separation from employment." Defendants point out that claims for "retaliation" and "wrongful termination" are specifically identified in the release. They also argue that retaliation falls within the "claims and matters" asserted in the NLRB case, as the Charge specifically complains of retaliation. But ultimately, their broad reading of the release would essentially make the exception meaningless. Given that the parties included a reference to the exception at the very beginning of the waiver portion, this interpretation is not a natural one.

Defendants also argue that the Release can be read to reserve only the minimum wage claim, but not the retaliation claim. But they offer no analysis to support this distinction. The carve-out reserves "all claims" under the FSLA. Minimum wage, maximum hour, overtime, and retaliation are all provided for in the statute. There is no reason to read "all claims" as preferring one over the other.

At best, Defendants make a fair argument for finding an ambiguity in these prior settlements. But even assuming they are correct, there would still be a question of fact remaining as to the *meaning* of the settlements. I cannot read the settlements in such a way as to warrant summary judgment in their favor.

### C.    *Issue Preclusion?*

Defendants also assert that Ms. Rocksmore's claim should be precluded by the NLRB proceeding, which they believe finally resolved with the settlement agreement. Defendants recite the elements of issue preclusion:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;
> (2) the first proceeding ended with a final judgment on the merits; and
> (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (citation omitted).

Defendants fail to meet this standard. They do not explain why the settlement should operate as a final judgment on the merits. "[S]ettlements ordinarily occasion no issue preclusion (sometimes called collateral estoppel), unless it is clear, as it is not here, that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414, *supplemented*, 531 U.S. 1 (2000).  The settlement here specifically states that it "does not settle any other cases or matters." With no persuasive reasoning from Defendants, it is not clear why they believe it was intended to be preclusive. Defendants have not carried their burden on this point.

20 – OPINION AND ORDER

**III.**    **Conclusion**

Defendants' motion for summary judgment [24] is GRANTED with respect to claim one,

the minimum wage claim. It is DENIED with respect to claim two, the retaliation claim.


DATED this ___24th___ day of February, 2015.

                                        /s/ Michael W. Mosman_____
                                        MICHAEL W. MOSMAN
                                        United States District Judge

21 – OPINION AND ORDER